UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT F. CAMERON,<br><br>            Plaintiff,<br>    v.<br><br>BELLEVUE POLICE DEPARTMENT et al.,<br><br>            Defendants. | CASE NO. 2:24-cv-00696-LK<br><br>ORDER GRANTING MOTION TO DISMISS |

This matter comes before the Court on Defendants' Motion to Dismiss. Dkt. No. 13. For the reasons explained below, the Court grants the motion.

**I.   BACKGROUND**

In 2023, Plaintiff Robert Cameron applied for a job with the City of Bellevue as a Court Liaison Administrator for the Bellevue Police Department. Dkt. No. 4 at 4–5. He was shortlisted with four other candidates, and after being interviewed, proceeded to the background check portion of the application process. *Id.* During the background check, Mr. Cameron was asked to "submit either proof of citizenship" or a "card" proving permanent residency. *Id.* at 5. Mr. Cameron

ORDER GRANTING MOTION TO DISMISS - 1

informed the City of Bellevue that he was Canadian and "could only provide a I-94 card with a job offer[.]" *Id.* The City of Bellevue reiterated to Mr. Cameron that he must provide proof of permanent residency in order to be considered for the job. *Id*. Mr. Cameron failed to do so, and alleges that he was not hired for the position as a result. *Id.* at 5–6. This lawsuit against the Bellevue Police Department and Captain Ellen Inman followed. The complaint brings claims "under US Federal Immigration law, EEOC and NAFTA treaty rights to work," and seeks $502,000 in compensatory damages and $100,000 in punitive damages. *Id.* at 3, 6.

## II.  DISCUSSION

Defendants move to dismiss Mr. Cameron's pro se complaint under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Dkt. No. 13 at 1. Due to potential confusion regarding the due date for Mr. Cameron's response brief, the Court struck his original response brief and the Defendants' original reply. Dkt. Nos. 16–18. After being provided additional time to respond, Mr. Cameron filed another response brief, Dkt. No. 20, and Defendants filed a reply responding to those arguments, Dkt. No. 22. As explained below, Mr. Cameron's response brief and subsequent ex parte communications with court staff violated a prior order of the Court and the Local Civil Rules.

The Court first addresses the appropriate sanction for Mr. Cameron's violations of the Court's order and the Local Civil Rules, and finds that Mr. Cameron's response brief should be stricken. The Court then explains that even if it were to consider Mr. Cameron's arguments, it would still grant Defendants' motion.

**A.  The Court Strikes Mr. Cameron's Opposition Brief Due to His Violations of The Court's Order and The Local Civil Rules**

In its order denying Mr. Cameron's request to be appointed an attorney, the Court reminded him that Local Civil Rule 1(d) requires him to "be respectful of others" and "avoid comment or behavior that can reasonably be interpreted as manifesting prejudice or bias toward another on the

basis of categories such as gender, race, ethnicity, religion, disability, age, or sexual orientation." Dkt. No. 19 at 3–4. The Court also warned him that if he continued to make the kind of disparaging remarks that were in his original response brief or if he continued to engage in ex parte communications with court staff, the Court may impose sanctions. *Id.* at 4. Mr. Cameron then submitted the same opposition brief that the Court had stricken, which included remarks such as:

- "Zak R Zewski [referring to counsel for Defendants, Ms. Zakrzewski] who comes from Europe and married an American in order to get status in the U.S. now argues that Washington State law passed in Olympia clearly supercedes my rights as a NAFTA Free Trader." Dkt. No. 20 at 8.

- "It is clear that Zak R Zewski is a beat down pathological liar attorney and should be treated as such. . . . Zak R Zewski is one of those individuals who was raised in hatred and vilification in Europe. (https://en.wikipedia.org/wiki/Zakrzewski) this name literally comes out of the Warsaw ghetto portrayed in so many WWII documentaries. The wikipedia claims there are 26,000 with that last name in Poland. Dr. Jordan Peterson a well known psychologist from UofT notes that many oppressed peoples often take on the mantra and personification of their oppressors and will use the same techniques of rights elimination and quelching and quashing that was used against them in events such as the Holocaust or 40 years of Stalinist Communist rule in Poland. I truly believe ZAK R Zewskis Motion to Dismiss a prime example of elimination law and the fact that the WASHINGTON State bar would support this type of person and her techniques of denial of human rights to speak, be acknowledged, be recognized or heard is a deeply disturbing to me as a justice official. Zak R Zewski the Polish Jew falsely and liably claims that I have failed to refer to any specific law in my complaint." *Id.* at 18.

ORDER GRANTING MOTION TO DISMISS - 3

Mr. Cameron also submitted more ex parte communications to the clerk's office:

> From: RFC <oaacars4u@gmail.com>
> Sent: Tuesday, September 24, 2024 4:57 PM
> To: Pat Sherwood <░░░░░░░░░░@wawd.uscourts.gov>
> Subject: Re: Activity in Case 2:24-cv-00696-LK Cameron v. Bellevue Police Department et al Minute Order
>
> **CAUTION - EXTERNAL:**
>
> NO THERE IS A MINUTE ORDER FILED TODAY
>
> NOT PRIOR
>
> IT IS NO.25 ON THE LIST.
>
> I CANNOT ACCESS IT
>
> ITS UNHIGHLIGHTED.
>
> I SEE THAT IT IS TEXT BUT IT IS NOT LIKE NO.18 WHICH WAS FILED BY THE CLERK ON SEPTEMBER 13TH.
>
> THERE IS NO REASON OR JUSTIFICATION FOR STRIKING MY DECLARATION AS IMPROPER BUT ALLOWING THE DEFENDANT TO FILE A DECLARATION
>
> IT IS CLEAR THAT THIS COURT IS ULTRA VIRES THE RULES SPECIFICALLY RULE 7 THAT SAYS YOU ARE TO SCHEDULE MOTIONS ASAP OR WITHIN 30 DAYS.
>
> I HAVE BEEN BLOCKED BY THE CLERK, THE CASE ASSISTANT AND THE JUDGE SINCE MAY 20TH FROM HAVING A MOTION HEARD.
>
> IT IS THE SAME MOTION
>
> I AM BEING TOLD I HAVE NO RIGHT TO BE HEARD, TO SHUT UP, NOT TO SPEAK, I HAVE NO RIGHTS,
>
> YOU ARE NAZIS, OR COMMUNISTS THAT BELIEVE IN NO RIGHTS
>
> YOU DO NOT UPHOLD THE CONSTITUTION, THE BILL OF RIGHTS, EEOC LAW, EMPLOYMENT LAW, CIVIL RULES OF PROCEDURE, THE ADA ACT, AND NAFTA.
>
> IT IS CLEAR THAT YOU I WILL HAVE TO SUE THIS COURT TO GET JUSTICE AND IT WONT BE THERE.
>
> I WILL SUE YOU HERE IN THE EST TIME ZONE.
>
> I WILL HOLD YOU ACCOUNTABLE AND MAKE SURE YOU NEVER HOLD ANY OFFICE WHATSOEVER AND EXPOSE YOU.
>
>> On Tue, Sep 24, 2024 at 7:43 PM Pat Sherwood <░░░░░░░░░░@wawd.uscourts.gov> wrote:
>>
>> Minute order entered by Judge King is at docket 18. As you have registered for Electronic Filing, you would have received your copies electronically, please review for content. If you have any further reply or response to the court, it must be filed in your court case for it to be considered.
>>
>> Sending your procedural and legal caseflow questions to me, or any other court clerk, is considered ex parte communication and is not procedurally appropriate.
>>
>> Thank you
>>
>> Patrick Sherwood | Deputy in Charge
>> US District Court | Western District of Washington
ORDER GRANTING MOTION TO DISMISS - 4

> From: RFC <oaacars4u@gmail.com>
> Sent: Tuesday, September 24, 2024 4:35 PM
> To: Pat Sherwood [redacted]@wawd.uscourts.gov>
> Subject: Re: Activity in Case 2:24-cv-00696-LK Cameron v. Bellevue Police Department et al Minute Order
>
> **CAUTION - EXTERNAL:**
>
> With Extreme Prejudice
>
> Re: 2;24-CV-00696-LK
>
> Mr. Sherwood
> Deputy Clerk
> WAWD Court
> Seattle
>
> MR SHERWOOD
>
> i AM SEEING NO. 24
>
> NO. 16
>
> NO. 17 THAT WAS A FORMER REPLY OF MINE AS BEING STRICKEN AS WELL BY THE CLERKS OFFICE
>
> PLEASE PROVIDE THE MINUTE ORDER OR THE LEGAL BASIS FOR THIS ILLEGAL ACTION
>
> ROBERT CAMERON
> PLAINTIFF
>
>
> On Tue, Sep 24, 2024 at 7:30 PM RFC <oaacars4u@gmail.com> wrote:
>> With Extreme Prejudice
>>
>> Re: 2;24-CV-00696-LK
>>
>> Mr. Sherwood
>> Deputy Clerk
>> WAWD Court
>> Seattle
>>
>> EMERGENCY CORRESPONDENCE.
>>
>> I RECEIVED THE ABOVE ECF NOTICE AND THE MINUTE ORDER OF THE JUDGE KING IS NOT ACCESSIBLE WHATSOEVER AND HAS NO LINK TO OPEN THE DOCUMENT
>>
>> THE JUDGE IS STRIKING A DECLARATION AS "IMPROPER" WHEN THE DEFENDANTS DECLARATION FILED TODAY IS BEING ALLOWED.
>>
>> IF YOU FAIL TO PROVIDE ACCESS TO THE MINUTE ORDER OR ALLOW ME TO SPEAK ORALLY TO MY MOTION THAT YOU HAVE BLOCKED SINCE MAY 20TH WHICH IS NOW 4 MONTHS AGO, I WILL FILE AN IMMEDIATE INJUNCTION WITH THE SUPREME FEDERAL COURTS TO INTERVENE AND STOP YOUR ILLEGAL ACTIONS FORTHWITH.
>>
>> ROBERT F. CAMERON
>> PLAINTIFF

ORDER GRANTING MOTION TO DISMISS - 5



Mr. Cameron's inappropriate and discourteous treatment of opposing counsel and court staff blatantly violates the Court's order and the Local Civil Rules. Mr. Cameron did not simply inadvertently fail to read the Court's September 16, 2024 order. He states in his September 18,

ORDER GRANTING MOTION TO DISMISS - 6

2024 opposition brief that "[t]he JUDGE in this matter without even a filed application has denied my request for an appointment of an attorney," Dkt. No. 20 at 21, making clear that he reviewed the order. The Court finds that Mr. Cameron's violation of the Court's order and the Local Civil Rules merits sanctions under Local Civil Rule 11(c). That rule provides that a party

> who without just cause fails to comply with . . . these rules, or an order of the court, or who presents to the court unnecessary motions or unwarranted opposition to motions . . . or who otherwise so multiplies or obstructs the proceedings in a case may, in addition to or in lieu of the sanctions and penalties provided elsewhere in these rules, be required by the court to satisfy personally such excess costs and may be subject to such other sanctions as the court may deem appropriate.

Because Mr. Cameron received and read the Court's warnings regarding his inappropriate briefing and communications and deliberately disobeyed the Court's order and the Local Civil Rules, the Court strikes his opposition brief. *See Smith v. Frank*, 923 F.2d 139, 142 (9th Cir. 1991) ("For violations of the local rules, sanctions may be imposed including, in appropriate cases, striking the offending pleading"); *Jones v. Metro. Life Ins. Co.*, No. C-08-03971-JW DMR, 2010 WL 4055928, at *6 (N.D. Cal. Oct. 15, 2010) ("[B]ased on its inherent powers, a court may strike material from the docket, including portions of a document, reflecting procedural impropriety or lack of compliance with court rules or orders."); *see also Kelley v. T-Mobile USA, Inc.*, No. 6:20-CV-01515-MK, 2022 WL 14111031, at *6 (D. Or. Oct. 6, 2022) ("Plaintiff's inappropriate behavior towards opposing counsel and Court staff in direct contravention of this Court's instructions regarding appropriate decorum" warranted dismissal of his case), *report and recommendation adopted,* 2022 WL 14011020 (D. Or. Oct. 24, 2022).[1] However, even if the Court were to consider Mr. Cameron's arguments, it would still dismiss his complaint.[2]

---

[1] The Court imposes this sanction pursuant to its authority under Local Civil Rule 11(c). Defendants' request for sanctions, Dkt. No. 22 at 1–2, while well-reasoned, is procedurally improper and the Court does not consider it. *See S/Y Paliador, LLC v. Platypus Marine, Inc.*, 344 F.R.D. 110, 120 (W.D. Wash. 2023).

[2] Although Mr. Cameron complains in his ex parte communications that his "motion" was never heard, a complaint is

ORDER GRANTING MOTION TO DISMISS - 7

**B.     Even If the Court Were to Consider Mr. Cameron's Arguments, They Are Without Merit**

Although the complaint is at times vague as to which specific statutes Mr. Cameron is suing under, the Court construes his complaint liberally because he is proceeding pro se. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The complaint, liberally construed, raises claims under (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, for discrimination; (2) the Immigration Reform and Control Act ("IRCA"), 8 U.S.C. § 1324b, for discrimination; and (3) the North American Free Trade Agreement ("NAFTA") and the United States–Mexico–Canada Agreement ("USMCA").

Defendants argue that the Court should dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because he "fail[s] to set forth any viable cause of action" and because the Court lacks subject matter jurisdiction over his claims. Dkt. No. 13.

1.   Legal Standard

A jurisdictional dismissal under Rule 12(b)(1) is warranted "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

Rule 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this standard, the Court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon*

---

not self-executing and does not automatically serve as a motion regarding any relief requested in the complaint. *See Gage v. Wells Fargo Bank, NA*, 450 F. App'x 121, 123 (3d Cir. 2011) ("[Plaintiff] also complains that the District Court erred by not acting sooner on the stay request embodied in his complaint, but [plaintiff] himself failed adequately to alert the District Court to his request for immediate relief by not filing a separate motion for a preliminary injunction at the time he filed the complaint."); *Rodriguez v. American Express*, No. CV F 03-5949 AWI LJO, 2006 WL 908613, at *8 (E.D. Cal. Apr. 7, 2006); *Banaszak v. CitiMortgage, Inc.*, No. 13-CV-13710, 2014 WL 12656623, at *2 (E.D. Mich. July 24, 2014). Even if Mr. Cameron had filed an appropriate motion, it would have been denied for the reasons provided below.

ORDER GRANTING MOTION TO DISMISS - 8

*Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not, however, accept as true legal conclusions or "formulaic recitations of the elements of a cause of action." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

  2. <u>The Court Does Not Have Jurisdiction Over Mr. Cameron's IRCA Claim</u>

Mr. Cameron alleges general violations of "federal immigration law," which the Court construes as a claim under the Immigration and Nationality Act ("INA"), as amended by IRCA. Dkt. No. 4 at 5 (capitalizations removed). IRCA prohibits citizenship status and national origin discrimination in hiring and firing employees, with certain exceptions. 8 U.S.C. § 1324b.[3]

Before suing under IRCA, Mr. Cameron must first file a claim with the Office of Special Counsel for Immigration Related Unfair Employment Practices ("OSC"). *See* 8 U.S.C. § 1324b(b)(1). He may initiate a private action only if the OSC fails to file a complaint before an administrative law judge within 120 days of receiving his claim. *See* 8 U.S.C. § 1324b(d)(2); *Gen. Dynamics Corp. v. United States*, 49 F.3d 1384, 1385 (9th Cir. 1995). But crucially, that private action must be brought before the Office of the Chief Administrative Hearing Officer ("OCAHO"). *Gen. Dynamics*, 49 F.3d at 1385; 8 U.S.C. § 1324b(d)(2). Only after receiving a final order from OCAHO may Mr. Cameron have his claim under these statutes reviewed in an Article III federal court, and even then, he must petition the Ninth Circuit directly for review. 8 U.S.C. § 1324b(i)(1).

---

[3] 8 U.S.C. § 1324b is a provision of the INA that prohibits discrimination based on citizenship status and national origin in hiring, termination, and recruiting or referring for a fee. It was enacted as part of IRCA.

ORDER GRANTING MOTION TO DISMISS - 9

This Court therefore lacks jurisdiction to hear Mr. Cameron's claims under IRCA, and this claim is dismissed without prejudice to Mr. Cameron filing a claim with the OSC.[4] The Court also notes that Mr. Cameron may not file a charge with both the Equal Employment Opportunity Commission ("EEOC") and the OSC based on any alleged "unfair immigration-related employment practice described in subsection (a)(1)(A)" of the statute (i.e., a charge of national origin discrimination, *see* 8 U.S.C. § 1324b(a)(1)(A)); he must choose one or the other. *See* 8 U.S.C. § 1324b(b)(2) (section titled "No overlap with EEOC complaints").

### 3. Mr. Cameron Fails to State a Title VII Claim

Mr. Cameron brings a claim for "violation of his EEOC right to employment based on nationality[.]" Dkt. No. 4 at 4. The Court construes this as a claim under Title VII alleging discrimination based on Mr. Cameron's status as a Canadian citizen. This claim fails on a number of bases.

*(a) Mr. Cameron did not exhaust his administrative remedies*

Prior to bringing his Title VII claim, Mr. Cameron was required to—but did not—exhaust his administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). This is a two-step process: first, he must file a charge with the EEOC within 180 days of the allegedly unlawful employment practice. *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008); 42 U.S.C. § 2000e–5(e)(1). Then, if the EEOC does not bring suit based on the charge, Mr. Cameron has 90 days from receiving the right-to-sue letter to file the complaint in federal court. *Surrell*, 518 F.3d at 1104; *see* 42 U.S.C. § 2000e–5(f)(1).

Mr. Cameron's complaint does not allege that he followed this process before filing the complaint on May 20, 2024. *See generally* Dkt. No. 4. In his opposition to Defendants' motion to

---

[4] Mr. Cameron states in his response brief that he filed a "DOJ Office of Special Counsel (OSC) for Immigration Unfair Employment Practices based on citizenship discrimination" on September 17, 2024. Dkt. No. 20 at 20.

ORDER GRANTING MOTION TO DISMISS - 10

dismiss, he contends that he "did file and receive[] the letter of right to sue the Defendants but did not receive the letter until August 19[.]" Dkt. No. 20 at 18; *see also* Dkt. No. 15 (right-to-sue letter dated August 6, 2024). But the right-to-sue letter does not show when Mr. Cameron filed the charge with the EEOC. What the right-to-sue letter does show is that he filed this action before receiving the letter. Besides the timing issue, Mr. Cameron also fails to provide the Court with sufficient detail about the charges he filed with the EEOC, which the Court needs to "discern whether [his] complaint to the EEOC that resulted in the right-to-sue letter exhausted some, all, or none of the allegations that form the basis for [his] complaint." *Smith v. Pick-N-Pull*, No. 3:20-CV-06124-RJB, 2020 WL 7385725, at *2 (W.D. Wash. Dec. 16, 2020).

Nevertheless, contrary to Defendants' assertions, Dkt. No. 13 at 10, Title VII's exhaustion requirement is a procedural (not jurisdictional) prerequisite to suing in federal district court. *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019).[5] However, exhaustion remains a mandatory processing rule, and Mr. Cameron must allege compliance with that requirement (or waiver by the Secretary, which he does not assert) in order to state a claim on which relief may be granted. *See George v. Youngstown State Univ.*, 966 F.3d 446, 469 (6th Cir. 2020) (the Supreme Court in *Fort Bend County* did not change precedent holding "that the administrative exhaustion requirement is a claim processing rule and therefore is 'subject to forfeiture' by the defendant"); *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1302 (N.D. Cal. 2020); *Horvath v. Camden Prop. Tr.*, No. CV-23-02211-PHX-SPL, 2024 WL 1240196, at *2 (D. Ariz. Mar. 22, 2024).

Mr. Cameron's failure to plead exhaustion thus warrants dismissal of his Title VII claim for failure to state a claim. *See McFarland-Lawson v. Ammon*, 847 F. App'x 350, 355 (7th Cir. 2021) ("The proper basis for dismissing a federal employee's employment discrimination claim

---

[5] The Court accordingly considers Defendants' exhaustion argument under Rule 12(b)(6) for failure to state a claim instead of Rule 12(b)(1) for lack of subject matter jurisdiction.

that has not been properly exhausted is for failure to state a claim upon which relief can be granted, not lack of subject-matter jurisdiction."); *Neill v. YMCA of San Diego*, No. 23-CV-457 JLS (DEB), 2024 WL 1859950, at *4 (S.D. Cal. Apr. 29, 2024) ("Not only must a plaintiff exhaust her claims to bring suit, but she must also *plead* exhaustion.").

*(b) Mr. Cameron's Title VII claim is based on a non-actionable theory*

Even if Mr. Cameron had exhausted his administrative remedies, the Court would find his claim to be meritless.

As an initial matter, Mr. Cameron has not named a proper defendant. The only proper defendant here is the City of Bellevue; the Bellevue Police Department is not a separate entity that can be sued, *see Broadus v. City of Bellevue*, No. C14-490-RAJ, 2015 WL 457803, at *3 (W.D. Wash. Feb. 3, 2015), and Title VII does not impose liability on individual employees such as Captain Inman, *see Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir. 1993).

Mr. Cameron's claim is defective on the merits as well because it is based on a non-actionable theory: citizenship discrimination. Although Title VII prohibits discrimination based on national origin, it generally does not prohibit discrimination based on citizenship status. *Espinoza v. Farah Mfg. Co*., 414 U.S. 86, 90–91 (1973); *see also id.* at 95 ("Aliens are protected from illegal discrimination under [Title VII], but nothing in [Title VII] makes it illegal to discriminate on the basis of citizenship or alienage."). The exception to this is when discrimination based on citizenship "has the purpose or effect" of discriminating based on national origin, such as when a citizenship requirement is really a "pretext to disguise what is in fact national-origin discrimination." *Id.* at 92; *see also Stankovic v. Newman*, No. 3:12-CV-399 RNC, 2013 WL 6842530, at *3 (D. Conn. Dec. 27, 2013) ("An employer is permitted to consider citizenship in making employment decisions as long as citizenship is not a proxy for national origin.").

Here, although Mr. Cameron states in conclusory fashion that "Defendants discriminated

ORDER GRANTING MOTION TO DISMISS - 12

against [him] based on [his] nationality as Canadian," Dkt. No. 20 at 17, his claim is clearly one for citizenship discrimination. Specifically, the premise for his discrimination claim is that Captain Inman "insisted that [he] provide [a] citizenship or [permanent resident] card under [Washington] State Law." Dkt. No. 4 at 5;[6] *see also* Dkt. No. 20 at 2 (alleging that state laws "deny[] my rights to equal treatment . . . as a non citizen and non permanent resident alien"). Even construing the complaint liberally in Mr. Cameron's favor, the Court cannot plausibly infer that the City of Bellevue removed Mr. Cameron from the applicant pool because he is Canadian. In fact, the allegations undercut that inference: after Mr. Cameron informed the City of Bellevue that he was Canadian, he was not at that point removed from consideration for the job. Dkt. No. 4 at 5. Instead, he was asked again to provide proof of U.S. citizenship or lawful permanent residency. *Id*. By all accounts, had he provided such proof, he would have proceeded through the application process like any other candidate. There are no facts alleged that suggest an animus against those of Canadian origin specifically; rather, the City was following state law.

Because Mr. Cameron's discriminatory treatment theory is based on his non-U.S. citizenship or lack of permanent residency status, not his Canadian national origin, it is not actionable under Title VII. *Espinoza*, 414 U.S. at 92; *see also, e.g.*, *Stankovic*, 2013 WL 6842530, at *3 (granting motion to dismiss where the plaintiff did "not claim that [the defendant's] alleged preference for U.S. citizens was designed to discriminate against Australians"); *Rai v. IBM Credit Corp.*, No. C 01-02283 CRB, 2002 WL 1808741, at *6 (N.D. Cal. Aug. 1, 2002) (plaintiff's "green card claim" not actionable absent facts suggesting that defendant's practice of requiring green card for employment systematically discriminated against persons of Fijian–Indian decent); *Lixin Liu*

---

[6] Sections 41.12.050 and -.070 of the Revised Code of Washington provide that, except for the positions of assistant chief, deputy chief, bureau commander, and administrative assistant or administrative secretary (depending on the size of the department), all police department positions are civil service positions requiring that the applicant "be a citizen of the United States of America" or "a lawful permanent resident." Again, Mr. Cameron applied to the Court Liaison Administrator position. Dkt. No. 4 at 4; Dkt. No. 14 at 4.

ORDER GRANTING MOTION TO DISMISS - 13

*v. BASF Corp.*, 409 F. App'x 988, 991 (8th Cir. 2011) (per curiam) (rejecting Title VII claim where the plaintiff "conflate[d] national origin and alienage" and "[h]is employment status was terminated because of his immigration status, not his Chinese ancestry." (citation omitted)).

        *(c) Mr. Cameron's Title VII claim also fails because he did not meet the job qualification requirements*

To state a claim for discrimination under Title VII, Mr. Cameron must show that he was qualified for the position. *Crowe v. Wormuth*, 74 F.4th 1011, 1035 (9th Cir. 2023). A "minimum qualification" to be hired for the Court Liaison Administrator position was status as either a "US citizen or lawful permanent resident." Dkt. No. 14 at 5.[7] As discussed above, Mr. Cameron does not allege that the Washington state law upon which this requirement was based was somehow a pretext for national origin discrimination, nor can he. The law applies to all applicants for civil service positions (with few exceptions that are not applicable here), regardless of national origin. Mr. Cameron does not dispute that he failed to meet this requirement; indeed, he expressly alleges that the reason he was removed from consideration for the job was because he could not provide proof of U.S. citizenship or lawful permanent resident status. Dkt. No. 4 at 5. Thus, he cannot state a claim for discrimination, and leave to amend would be futile. *See Kucuk v. Cent. Washington Univ.*, No. C17-1262JLR, 2018 WL 1570922, at *5 (W.D. Wash. Mar. 30, 2018) (dismissing Title VII retaliatory failure-to-hire claim with prejudice because position at issue required a "doctoral degree from an AACSB-accredited university," which plaintiff did not have); *Daevu v. San Mateo Cnty.*, No. C 09-0406 JL, 2010 WL 11582920, at *2 (N.D. Cal. May 6, 2010) (dismissing Title

---

[7] The Court may consider the job description under the incorporation by reference doctrine. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (approving incorporation by reference when (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document" (quotation marks omitted)). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

VII failure-to-promote claim without leave to amend because position required a passing grade on an exam that plaintiff did not pass). This claim is dismissed with prejudice.

### 4. Mr. Cameron Does Not Have Standing Under NAFTA and the USMCA

Finally, neither the NAFTA nor the USMCA contain a private right of action. Section 102(c) of the NAFTA Implementation Act precludes a private right of action or remedy under NAFTA against a federal, state, or local government, or against a private party. 19 U.S.C. § 3312(c). On July 1, 2020, the USMCA entered into force, replacing NAFTA. *See* United States-Mexico-Canada Agreement, Office of the U.S. Trade Representative, https://ustr.gov/trade-agreements/free-trade-agreements/united-states-mexico-canada-agreement (last visited Oct. 23, 2024); *see also* United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116-113, 134 Stat. 11 (2020) ("USMCA Implementation Act"). The USMCA Implementation Act contains language similar to NAFTA that precludes a private right of action. *See* Pub. L. No. 116-113, 134 Stat. 11 (2020), codified at 19 U.S.C. §§ 4501–4701; *see id.* § 4512(c) ("No person other than the United States—**(1)** shall have any cause of action or defense under the USMCA or by virtue of congressional approval thereof; or **(2)** may challenge, in any action brought under any provision of law, any action or inaction by any department, agency, or other instrumentality of the United States, any State, or any political subdivision of a State, on the ground that such action or inaction is inconsistent with the USMCA."). Mr. Cameron therefore does not have standing to bring claims under either treaty. *See Garza v. Citigroup Inc.*, 724 F. App'x 95, 100 n.6 (3d Cir. 2018) ("[F]ederal law expressly disclaims the availability of a private right of action under NAFTA."); *LeClerc v. Webb*, 419 F.3d 405, 412 n.12 (5th Cir. 2005) ("[Plaintiff], although a Canadian citizen, is not a beneficiary of NAFTA," and "has no private right of action thereunder"). These claims are dismissed with prejudice.

ORDER GRANTING MOTION TO DISMISS - 15

### 5. Mr. Cameron's Preemption Argument Fails

To the extent Mr. Cameron challenges Sections 41.12.050 and -.070 of the Revised Code of Washington as preempted by the federal laws upon which he relies, *see* Dkt. No. 20 at 2–7, this challenge fails as well. As discussed above, Mr. Cameron must pursue any citizenship discrimination claim he has through IRCA, and IRCA expressly exempts "discrimination because of citizenship status which is otherwise required in order to comply with law, regulation, or executive order, or required by Federal, State, or local government contract[.]" 8 U.S.C. § 1324b(a)(2)(C). "Law" includes state law; as the Special Counsel for Immigration Related Unfair Employment Practices concluded more than three decades ago, "discrimination because of citizenship status that is required in order to comply with state law is excepted from the definition of an unfair immigration-related practice within the meaning of 8 U.S.C. § 1324b." Memorandum Opinion For The Special Counsel For Immigration Related Unfair Employment Practices, 13 U.S. Op. Off. Legal Counsel 72, 76 (1989). Where the INA refers to federal law alone, it uses the term "Federal law." *See, e.g.*, 8 U.S.C. § 1324a(f)(1). Section 1324b(a)(2)(C)'s more expansive use of the word "law" indicates that it includes state law as well. *See Elhajomar v. City and County of Honolulu*, 1990 WL 512094, at *7 (OCAHO Oct. 4, 1990) ("a state statute is a 'law,'" and "if the word 'law' was intended by Congress to mean anything other than Federal law, it could have easily been inserted"). Indeed, "it is well settled" in OCAHO jurisprudence "that the exception at § 1324b(a)(2)(C) is available to employers acting under color of State authority or pursuant to State law." *Ahmad S. U.S. v. Patrol & Guard Enterprises, Inc.*, 2000 WL 772987, at *16 (OCAHO Jan. 6, 2000); *see also Murtano v. C.R. England, Inc.*, 2005 WL 1254927, at *6 (Mar. 28, 2005) ("OCAHO cases have applied the § 1324b(a)(2)(C) exception to excuse acts of citizenship status discrimination taken pursuant to state law."); *Anderson v. Newark Public Schools*, 1999 WL 497197, at *8 (OCAHO Mar. 9, 1999) ("While [plaintiff] asserts in her OSC charge that INA

'preempts' the state statute, it appears, rather, that the intent of § 1324b was quite the reverse: the INA defers to the *state* law."). The Washington statutes listed above therefore do not conflict with applicable federal law. *See Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1274 (9th Cir. 1993) (a Postal Service regulation providing that "only citizens and permanent resident aliens are eligible" for the position at issue "could not, as a matter of law, violate § 1324b(a)(1).").

**C.     The Complaint is Dismissed Without Leave to Amend**

A district court should not dismiss a pro se complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quotation marks omitted). The Court concludes that granting leave to amend is not appropriate here. As described above, the Court has no jurisdiction to hear the IRCA claim. No amendment could overcome NAFTA's and USMCA's lack of private right of action, and as to the Title VII claim, no additional allegations could overcome the fact that Mr. Cameron did not meet the minimum qualifications for the position that were required by state law.

### III.   CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss. Dkt. No. 13. Because no amendment can cure the defects in Mr. Cameron's complaint, the complaint is dismissed without leave to amend.

Dated this 28th day of October, 2024.

*Lauren King*
Lauren King
United States District Judge